J-A21001-16

2016 PA Super 250

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID DERRY, | |
| Appellant | No. 3501 EDA 2015 |

Appeal from the Judgment of Sentence entered October 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001783-2013

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID DERRY, | |
| Appellant | No. 3502 EDA 2015 |

Appeal from the Judgment of Sentence entered October 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012178-2013

BEFORE:  BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

OPINION BY BENDER, P.J.E.:                    **FILED NOVEMBER 15, 2016**

In this consolidated action, Appellant, David Derry, appeals from the judgment of sentence of an aggregate term of 5-10 years' incarceration and 20 years' probation, imposed following his commission of new crimes in November of 2014, while he was serving terms of probation in effect at CP-51-CR-0001783-2013 (hereinafter, "case number 1783") and CP-51-CR-

0012178-2013 (hereinafter, "case number 12178"). Appellant presents multiple challenges to the discretionary aspects of the sentence imposed by the sentencing court. After careful review, we affirm.

The trial court set forth the factual and procedural history of this case as follows:

> On October 23, 2013, [Appellant] entered into a negotiated guilty plea to the charges of … Possession with Intent to Distribute ("PWID") and Criminal Conspiracy and was sentenced by this [c]ourt to twelve (12) months of drug treatment, followed by four (4) years' probation. On November 14, 2014, Philadelphia Police arrested [Appellant] for Burglary, Aggravated Assault, Reckless Endangerment, Violation of a Protection From Abuse ("PFA") Order, and related, lesser charges. These charges were based on confrontations that occurred between [Appellant] and Lynette Rosario ("Rosario"), on November 6 and 14, 2014. On November 6, 2014, [Appellant] came to Ms. Rosario's house at 22 East Thelma Street, in the city and county of Philadelphia. N.T.[,] 10/19/2015[,] at 5-6. [Appellant] came to the door, and pulled Ms. Rosario into the basement where he proceeded to slap and punch her. *Id*. Defendant then went upstairs and took clothing, her car keys, and her vehicle. *Id.*

> On November 14, 2014, Ms. Rosario was getting her nails done at E Street and Wyoming Street, in the city and county of Philadelphia, at approximately 12:30 in the afternoon when she observed [Appellant] in her car, circling in the parking lot. *Id.* at 6-7. Ms. Rosario, who was with her nephew at the time, proceeded to leave the salon and return to her residence. *Id.* at 7. Upon returning to her residence, Ms. Rosario found [Appellant] parked outside of her residence. [*Id.*] at 7. [Appellant] exited his vehicle, made his way toward the vehicle that Ms. Rosario and her nephew were in, and attempted to kick in the window of the car. *Id.* At the time of this incident on November 14, 2014, the PFA was in place. *Id.* at 7-8.

> After [the] Preliminary Hearing, the District Attorney filed criminal informations arising from the November 6 and 14, 2014 incidents at CP-51-CR-0013897[-2014] and [CP-51-CR-

]0013898[-2014] (collectively "New Charges"). At the first trial listing [for the] [N]ew [C]harges, Ms. Rosario appeared and asked the District Attorney's Office to withdraw the prosecution, however, the office did not acquiesce to her wishes and sought a new trial date. On October 16, 2015, at the second trial hearing, [Appellant] agreed to transfer the New Charges from Judge Robert P. Coleman to this [c]ourt for disposition pursuant to Pa. R.C[rim].P. 701.

At a hearing held before this [c]ourt on October 19, 2015, [Appellant] entered into a negotiated guilty plea to the New Charges. [*Id.*] at 8-13. This [c]ourt accepted [Appellant]'s plea, and found him to be in direct violation of his probation. *Id.* This [c]ourt went on to impose Violation of Probation ("VOP") sentences of five (5) to ten (10) years['] imprisonment for PWID and ten (10) years of concurrent probation for Criminal Conspiracy on CP-51-CR-0001783-2013, and ten (10) years['] consecutive probation on CP- 51-CR-0012178-2013. *Id.* at 22-23. On October 28, 2015, [Appellant] filed Motions for Reconsideration of VOP sentence, arguing that the VOP sentences imposed by the [c]ourt were greater than necessary to protect Ms. Rosario, rehabilitate [Appellant], and prevent a repeat occurrence. On November 4, 2015, this [c]ourt denied both Motions for Reconsideration without a hearing. N.T.[,] 11/4/2015[,] at 2-3.

[Appellant] filed [a] Notice of Appeal on November 17, 2015, after which this [c]ourt entered an Order on December 8, 2015, requesting the filing of a [Pa.R.A.P. 1925(b) statement] within twenty-one (21) days. On December 28, 2015, [Appellant] filed [his Rule 1925(b) statement]. [Therein, Appellant] complained that this [c]ourt imposed an [i]llegal [s]entence of [p]robation [at case number 1783], arguing that the aggregate penalty imposed by the [c]ourt exceeded the maximum sentence of ten (10) years allowed for by the penalty provision of 35 P.S. § 780-113(f)(1.1). Further, [Appellant] allege[d] that the [c]ourt did not adequately consider all relevant factors prior to imposing the VOP penalty. [Appellant] state[d] that the penalty was motivated by ill will and a desire to punish [Appellant]. [Appellant] also allege[d] the VOP sentence imposed was excessive and violated fundamental norms of sentencing as set forth under Pa.R.A.P. 2119(f).

Trial Court Opinion (TCO), 2/25/16, at 1-3.

Appellant now presents the following claims for our consideration:

A. The court did not adequately consider all relevant factors prior to imposing the VOP sentences, which instead appear to have been motivated by ill will and a desire to punish [Appellant].

B. The court imposed an unreasonable term of probation at [case number 1783].

C. The court's aggregate VOP penalty in these cases was manifestly excessive and unreasonable.

Appellant's Brief, at 3 (unnecessary capitalization and citations omitted).

All three of Appellant's claims facially implicate the discretionary aspects of the trial court's sentencing decision.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill[-]will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Hoch**, 936 A.2d 515, 517–18 (Pa. Super. 2007) (quoting **Commonwealth v. Shugars**, 895 A.2d 1270, 1275 (Pa. Super. 2006)).

Moreover,

[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and

- 4 -

modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912-13.

As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id.*

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).

Instantly, Appellant timely appealed his sentence, after having preserved his sentencing claims in a post-sentence motion. Appellant has also provided a Rule 2119(f) statement in his appellate brief, which purports to offer reasons why his sentencing claims present substantial questions for our review. Appellant suggests three potential substantial questions: first, that the VOP court failed to consider factors set forth in 42 Pa.C.S. § 9721(b). Second, that the sentence was the product a "desire to punish;"

and, third, that the aggregate sentence imposed was manifestly unreasonable in the circumstances of this case.

Appellant contends his first claim satisfies the substantial question test because the trial court ostensibly failed to adhere to the principles set forth in Section 9721(b), that is, that the "sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b) (hereinafter, Section 9721(b) factors).

An averment that "the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of Appellant, as 42 PA.C.S.[] § 9721(b) requires[,]" presents a substantial question for our review in typical cases. *Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2012). However, here, the Commonwealth argues that our Supreme Court, in *Commonwealth v. Pasture*, 107 A.3d 21, 27 (Pa. 2014), held that Section 9721(b) does not apply to a sentence imposed for a VOP and, therefore, that a sentence's inconsistency with Section 9721(b) factors does not present a substantial question for our review on the basis that a sentence is "inconsistent with a specific provision of the Sentencing Code." Commonwealth's Brief, at 6-7; *Moury*, 992 A.2d at 170 (quoting from *Sierra* 752 A.2d at 912-13).

Indeed, in *Pasture*, our Supreme Court stated:

- 6 -

> The sentencing court's institutional advantage is, perhaps, more pronounced in fashioning a sentence following the revocation of probation, which is qualitatively different than an initial sentencing proceeding. At initial sentencing, all of the rules and procedures designed to inform the court and to cabin its discretionary sentencing authority properly are involved and play a crucial role. However, it is a different matter when a defendant reappears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence. For example, in such a case, contrary to when an initial sentence is imposed, the Sentencing Guidelines do not apply, *and the revocation court is not cabined by Section 9721(b)'s requirement* that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."

***Pasture***, 107 A.3d at 27 (emphasis added).

Additional scrutiny is warranted, however, as this statement by our Supreme Court, as interpreted by the Commonwealth, appears to contradict the unanimous holding of an *en banc* panel this Court made just a year prior to ***Pasture***, that a VOP court's failure to consider Section 9721(b) factors does present a substantial question for our review. ***See Commonwealth v. Cartrette***, 83 A.3d 1030, 1042-43 (Pa. Super. 2013) (recognizing, in an appeal from a VOP sentence, that a substantial question is presented by the claim that "the sentencing court did not consider the appropriate sentencing factors delineated in" Section 9721(b), although ultimately rejecting that particular sentencing claim on waiver grounds). The ***Cartrette*** Court recognized that some provisions of Section 9721(b) do not apply at VOP sentencing proceedings, such as the command that the sentencing court "shall also consider any guidelines for sentencing and resentencing adopted

- 7 -

by the Pennsylvania Commission on Sentencing." *Id.* at 1040-41 (quoting from 42 Pa.C.S. § 9721(b)).

This discrepancy between this Court's unanimous *en banc* decision in ***Cartrette***, and our Supreme Court's decision in ***Pasture***, turns on the Supreme Court's use of the term, "cabined," in the phrase, "the revocation court is not *cabined* by Section 9721(b)'s requirement that 'the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.'" ***Pasture***, 107 A.3d at 27 (emphasis added).

The Commonwealth would have us interpret 'cabined' in this context to mean, effectively, 'need not consider at all.' ***See*** Commonwealth's Brief, at 7 ("Plainly, the revocation court could not have violated a provision of the Sentencing Code that did not apply to [Appellant]'s case."). This interpretation contradicts the more nuanced view expressed in ***Cartrette*** regarding the applicability of Section 9721(b) to VOP sentences:

> While *parts* of § 9721(b) do not govern revocation proceedings, as our sentencing guidelines are not required to be consulted in such instances, ***see*** 204 Pa.Code. § 303.1(b), *other provisions of that section do apply*. *For example, the sentencing court must "follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).* In addition, in all cases where the court "resentences an offender following revocation of probation, county intermediate punishment or State intermediate punishment or resentences

following remand, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id.* Failure to comply with these provisions "shall be grounds for vacating the sentence or resentence and resentencing the defendant." *Id.*

*Cartrette*, 83 A.3d at 1040–41 (emphasis added).

Moreover, the Commonwealth's interpretation of the Supreme Court's use of the term 'cabined' is far from the obvious one. The *Pasture* Court's use of this term does not imply that Section 9721(b) is now wholly irrelevant or inapplicable to VOP sentences, contrary to all previous authority. The definition of the verb 'cabined' is to "confine in a small space." The New Oxford American Dictionary, 239 (1st ed 2001). Thus, we read "the revocation court is not *cabined* by Section 9721(b)'s requirement," *Pasture*, 107 A.3d at 27 (emphasis added), to be synonymous with, 'the revocation court is not confined or restrained *solely* by Section 9721(b) factors.' Instead, at a VOP sentencing hearing, additional factors and concerns are in play. The statute governing the modification or revocation of an order of probation discusses these additional concerns:

**(b) Revocation.--**The court may revoke an order of probation upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.

**(c) Limitation on sentence of total confinement.-**-The court shall not impose a sentence of total confinement upon revocation unless it finds that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c).

Thus, Section 9771(c) mandates a VOP court's consideration of additional factors at sentencing not addressed by Section 9721(b). Consequently, a VOP court is not *confined* to *only* consider the factors set forth in Section 9721(b), that is, it is not *cabined* by Section 9721(b). Instead, a VOP court must *also* consider the dictates of Section 9771(c), given the unique aspects of VOP sentences not applicable when a court issues the initial sentence. In addition to issuing a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant[,]" a VOP court must also consider, for example, whether the sentence imposed is "essential to vindicate the authority of the court[,]" and must give "due consideration … to the time spent serving the order of probation." 42 Pa.C.S. § 9771(c). Both of these concerns are unique to VOP sentencing hearings and may, in the end, weigh heavily on a court's consideration of an appropriate VOP sentence. But such additional considerations do not, as a necessary consequence, render the Section 9721(b) factors inapplicable for purposes of VOP sentences.

There should be little doubt about the intent of the ***Pasture*** Court. The Court never explicitly stated that a claim alleging a VOP court's failure to

consider Section 9721(b) factors no longer presents a substantial question for the purposes of discretionary sentencing review. Nor did the *Pasture* Court expressly overturn cases such as *Cartrette*, which clearly stated that such a claim does present a substantial question. Indeed, the *Pasture* Court, in reversing this Court's decision[1] to overturn Pasture's sentence, ultimately concluded that the Superior Court had given "insufficient deference to the revocation court's imposition of the sentence[.]" *Pasture*, 107 A.3d at 29. This strongly suggests the *Pasture* Court had reached the merits of Pasture's discretionary aspects of sentencing claim, and had not reversed the lower court based on the substantial question doctrine. Indeed, there is absolutely no discussion of the substantial question doctrine at all in *Pasture*.

Accordingly, we hold that *Pasture* did not upend our substantial question doctrine, as our Supreme Court did not hold in that case that consideration of Section 9721(b) factors is now irrelevant or inapplicable to VOP sentences. To the contrary, a VOP sentencing court must consider those factors, *see Cartrette*, 83 A.3d at 1040–41, but must also consider factors set forth in Section 9771(c), which are unique to VOP sentences.[2]

---

[1] *Commonwealth v. Pasture*, 48 A.3d 489 (Pa. Super. 2012) (memorandum opinion).

[2] As the *Pasture* Court suggested, review of the discretionary aspects of a VOP court's sentence with regard to Section 9721(b) factors may, as a
*(Footnote Continued Next Page)*

Therefore, we find that Appellant presents a substantial question for our review, to the extent that he challenges the sentencing court's failure to consider Section 9721(b) factors. *Riggs*, *supra*.

Appellant also claims that his sentence was a product of a "desire to punish," which presents a separate potential substantial question. Appellant's Brief, at 18. As the Commonwealth correctly points out with regard to this claim, Appellant cites no conflicting sentencing provision or case law showing such a desire is contrary to the fundamental norms of

---

*(Footnote Continued)* ───────────────

practical matter, dictate a greater degree of deference from a reviewing court:

> Simply put, since the defendant has previously appeared before the sentencing court, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing. The rationale for this is obvious. When sentencing is a consequence of the revocation of probation, the trial judge is already fully informed as to the facts and circumstances of both the crime and the nature of the defendant, particularly where, as here, the trial judge had the benefit of a PSI during the initial sentencing proceedings. *See* [*Commonwealth v. Walls*, 926 A.2d 957, 967 n.7 (Pa. 2007)] ("Where [PSI] exist[s], we shall continue to presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.").

*Pasture*, 107 A.3d at 28. However, while *Pasture* guides our review of claims concerning the discretionary aspects of a VOP court's sentence with respect to the sentencing court's adherence to Section 9721(b) factors, it does not proscribe our review entirely under the substantial question doctrine.

sentencing.[3]  However, it is axiomatic that an abuse of a sentencing court's discretion may be demonstrated where the court "exercised its judgment for reasons of partiality, prejudice, bias or ill[-]will[.]"  *Hoch*, 936 A.2d at 518.  Thus, to the extent that Appellant argues that the VOP court's desire to punish was motivated by one of these factors, and can demonstrate such with adequate support from the record, he presents a substantial question for our review, because sentences which are the product of such factors are necessarily contrary to the fundamental norms of sentencing.

Appellant also claims that the aggregate VOP sentence imposed by the court was manifestly excessive and unreasonable.  A claim that "a sentence is manifestly excessive such that it constitutes too severe a punishment raises a substantial question."  *Commonwealth v. Kelly*, 33 A.3d 638, 640 (Pa. Super. 2011).  Accordingly, we now turn to the merits of Appellant's sentencing claims.

First, in the argument portion of his brief, under the auspices of his first claim, Appellant asserts that the trial court failed to consider "the impact of incarceration on the well-being of Ms. Rosario and her child with

_____

[3] Nevertheless, the Commonwealth disingenuously construes Appellant's claim as an assertion that "punishing a defendant for criminal behavior is contrary to the fundamental norms of sentencing."  Commonwealth's Brief, at 7.  Obviously, albeit inarticulately, Appellant is trying to challenge the zeal of the sentencing court, not its basic function.  We note that the Commonwealth's rhetorical gamesmanship in this regard is not helpful to our review.

[Appellant][.]" Appellant's Brief, at 19. However, Appellant fails to argue how this concern relates to the VOP court's consideration of Section 9721(b) factors. While the court is required to consider the gravity of the *offense* as it relates to the impact on the life of the victim and on the community, it is not required under that provision to consider the impact of the *sentence* on the victim and/or the community. Accordingly, we find no merit to this aspect of Appellant's claim.

Next, Appellant asserts that the court failed to adequately consider his rehabilitative needs. In this regard, Appellant avers that the court improperly characterized his technical violations of failing to report for treatment under the terms of his probation, and testing positive for marijuana. However, Appellant was not sentenced primarily for technical violations of his probation. More importantly, Appellant violated his probation by committing new offenses to which he pled guilty: simple assault, criminal trespass, and indirect criminal contempt (for the violation of a PFA in effect with regard to Ms. Rosario). Accordingly, we find the VOP court's discussion of his technical violations to be ancillary to the primary justification for his new sentence. Moreover, Appellant does not engage in any discussion of his rehabilitate efforts, successful or otherwise, other than to intimate that the court's ostensible overstatement of his technical violations of probation was improper. That Appellant's technical violations were relatively minor does not demonstrate that the court was unaware of his rehabilitative efforts, or that the efforts made showed promise not

reflected in the VOP court's sentence. To the contrary, Appellant's commission of new offenses, in addition to his technical violations of the terms of his probation, demonstrate the lack of success of the rehabilitative aspects of Appellant's previously imposed probationary sentence. Therefore, we find this argument unpersuasive and lacking merit.

Next, Appellant alleges bias or ill-will on the part of the VOP court. When Appellant requested a date for a hearing on his post-sentence motion for seeking reconsideration of his sentence, the VOP court addressed the matter as follows:

> [Appellant's Counsel]: I think he should – I would ask that he be present.
>
> THE COURT: Okay, sure. We've got to accommodate him. Sure. Accommodate him. They go to Graterford every day.
>
> [. . .]
>
> [Prosecutor]: What's his name, Judge?
>
> THE COURT: His name is David Derry, D-A-V-I-D, Derry, D-E-R-R-Y. And we'll do him November 4th. There you go. Signed, sealed – let me give this to – I'm going to make a copy for everybody. Bright and early. 9 o'clock we'll do him. Tell him to get dressed today, so he can be on time tomorrow. Tell him to wear a suit and tie. Get dressed up. We're going to have a party in here.
>
> [Prosecutor]: We're bringing him down? He'll be dressed – he'll be dressed however he wishes.
>
> THE COURT: He can come in however he wants to. He can come in naked as a jaybird. Doesn't matter. Okay. We'll see you tomorrow.
>
> MR. MAURER: Thank you, Judge. Appreciate the courtesy.

- 15 -

> THE COURT: I'll bring the candles, and the matches. Have the fireworks go out [sic]. You'll think it's the Fourth of July here tomorrow. Next.

N.T., 11/3/15, at 5-6.

Appellant believes the VOP court's comments above, on their face, demonstrated the court's ill-will or bias towards him. We disagree. While the court appears to have engaged in a series of sarcastic comments, essentially feigning excitement about Appellant's return to the courtroom, we do not believe this conduct rises to the level of "partiality, prejudice, bias or ill[-]will." ***Hoch***, 936 A.2d at 518. The court does not appear to be pre-judging the merits of Appellant's post-sentence motions, or making any specific comments suggesting a particular animus towards Appellant. In any event, Appellant fails to sufficiently articulate, with any specificity, why the court's comments should be received as bias or ill-will toward Appellant specifically, rather than simply playful banter among court staff and attorneys conducted outside the presence of Appellant. Accordingly, we conclude that this aspect of Appellant's first claim also lacks merit.

Appellant's second claim generally asserts that his term of 10 years' probation, imposed at case number 1783, was unreasonable. However, beyond that, his argument is difficult to discern. That new term of 10 years' probation was imposed for Appellant's criminal conspiracy conviction, which the court ordered to run concurrently with Appellant's 5-10 year term of incarceration for PWID. Appellant complains:

> In the event [Appellant] is paroled at or near his minimum date in Case 1783, he will have been "supervised" for no less than 5

years at the point the [c]ourt's sentence of 10 years['] probation becomes effective. If that probation term is consecutive according to the docket, the resulting aggregate term of supervision will exceed the ten-year maximum sentence applicable to 51-CR-01783-2013. While this sentence was not illegal, an aggregate supervision term of 20 years is unreasonable.

Appellant's Brief, at 22.

It appears that the true nature of Appellant's complaint is that the docket does not reflect the sentence imposed by the VOP court at the VOP sentencing hearing. The court indicates in its opinion that the sentence in question was imposed concurrently, not consecutively, to the sentence of incarceration. TCO, at 2. Likewise, the VOP sentencing hearing transcript reflects the same sentencing structure. N.T., 10/19/15, at 48. Moreover, the sentencing order for case numbers 1783 reflects the same.

The "Disposition Sentencing/Penalties" section of the publicly available docket sheets for case number 1783 does not indicate either way whether the sentence in question is to run concurrently or consecutively to the sentence of incarceration. However, the docket entry for 10/19/2015 reads, in part, *verbatim*: "PROBATION REVOKED; NEW SENTENCE: 5-10 YRS CONFINEMENT FOLLOWED BY 10YR PROBATION/CREDIT FOR TIME GRANTED[.]" This contradicts the sentence actually imposed by the VOP

court at sentencing, as reflected in the sentencing order, and as stated by the VOP court in its opinion.[4]

Although the sentencing order and the court's statement at the sentencing hearing clearly control, we acknowledge that this incorrect entry in the lower court docket could cause confusion in the future. Accordingly, we remand this matter to the VOP court to correct the erroneous docket entry for case number 1783 entered on 10/19/2015, which should reflect that the imposed term of probation is concurrent to, not consecutive to, the imposed term of incarceration.

Finally, in his third claim, Appellant challenges the aggregate sentence imposed at case numbers 1783 and 12178 as manifestly unreasonable. The *entirety* of Appellant's argument is as follows:

> "Generally speaking, 'unreasonable' commonly connotes a decision that is 'irrational' or 'not guided by sound judgment.'" [**Commonwealth v.**] **Walls**[, 926 A.2d 957,] 963 [Pa. 2007],

_____

[4] Appellant has three VOP sentences. As noted above, at case number 1783, he was sentenced to 5-10 years' incarceration, with a concurrent term of 10 years' probation. At case number 12178, Appellant was sentence to 10 years' probation, consecutive to the sentence imposed at case number 1783. At first glance, it appeared that the troublesome docket entry on case number 1783 may have simply reflected the aggregate sentence for both cases, with the concurrent-to-incarceration probation term being omitted. However, the publically available docket sheets for case number 12178 refute such a conclusion, as it lists only the sentence at case number 12178, which is stated as, *verbatim*: "NEW: 10YR PROBATION/ CONSECUTIVE TO ANY OTHER[.]" Thus, the docket entries for case number 1783 are erroneous or, at best, misleading. Read together, these combined entries suggest that Appellant has two consecutive terms of 10 years' probation, rather than just one.

quoting the Random House Dictionary of the English Language, 2084 (2d ed. 1987). The following aspects of [Appellant]'s VOP sentence confirm that it was unreasonable:

1. The victim, Lynette Rosario, appeared at sentencing to explain that she had known [Appellant] for 22 years, and that her infant daughter with [Appellant], Maribel Derry, was almost seven months old.

2. Ms. Rosario attributed the new charges to "arguing back and forth, both of us." Mr. Rosario added that "I wasn't taking my meds, and we were just having problems."

3. The new charges in Case 1783 were resolved with a sentence of time served to 23 months, while the new charges at Case 12178 involved a guilty plea to ICC with no further penalty.

4. [Appellant] reported to probation as directed until the incident on November 6, 2014, which was the basis of the new charges at Case 1783.

These circumstances, for which [Appellant] had served 11 months in prison at the time of sentencing, did not warrant additional penalties of 5 to 10 years SCI, followed by (depending on the [c]ourt's opinion or the docket) an aggregate term of either 10 or 20 additional years of probation.

Appellant's Brief, at 22-23 (citations to reproduced record omitted).

Appellant's argument is woefully inadequate to establish an abuse of the VOP court's discretion. Appellant primarily lists various factual assertions which the VOP court may or may not have accepted. However, the VOP court was not compelled to accept Ms. Rosario's version of events. Indeed, the VOP court stated, "as Ms. Rosario appeared in person before the [c]ourt herself, the [c]ourt had no option but to consider her testimony, and found her explanation for [Appellant]'s conduct to be unsatisfactory." TCO, at 6. This Court cannot substitute its judgment regarding Ms. Rosario's

credibly for that of the VOP court. ***See Commonwealth v. Myers***, 722 A.2d 649, 654 (Pa. 1998) ("[O]ur standard of review does not permit an appellate court to challenge the sentencing court's credibility determinations.").

Moreover, the primary justification for Appellant's VOP sentence was not merely the specific conduct giving rise to his new offenses, but the fact that Appellant engaged in such conduct while already under the court's supervision and, additionally, in violation of the PFA in effect when he committed those offenses. The VOP court stated:

> This [c]ourt's sentence was not manifestly unreasonable. The record clearly shows that the [c]ourt took several factors into consideration when formulating [Appellant]'s new sentence. These considerations include: [Appellant]'s recent arrest, [Appellant]'s direct and technical violations, the willfulness of these violations, the Sentencing Guidelines, the fundamental norms which underlie the sentencing process, [Appellant]'s statements, and the probation officer's report.
>
> ...
>
> [Appellant] assaulted and burglarized Ms. Rosario, and in doing so violated his PFA. This [c]ourt concluded that a lesser sentence would deprecate the seriousness of the offense…. Additionally, [Appellant]'s conduct has escalated from non-violent crimes, for which [Appellant] was currently on the [p]robation of this [c]ourt, to the violent crimes [Appellant] committed against Ms. Rosario. Thus the past conduct, and escalation in conduct, of [Appellant] indicates that it is likely that he will commit another crime if he is not imprisoned….. Therefore, the imposition of this sentence was essential to vindicate the authority of this [c]ourt.

TCO, at 5-6.

Clearly, the VOP court considered far more than the seriousness of Appellant's new offenses. Consequently, Appellant's cursory argument appears largely unresponsive to many of the reasons the VOP court offered for the imposed sentence. We agree that Appellant's sentence appears harsh; however, he simply fails to demonstrate that the harshness of his sentence is a product of an abuse of the VOP court's discretion. Thus, we conclude that his third claim also lacks merit.

In sum, we hold that the failure to consider Section 9721(b) factors does present a substantial question for our review of the discretionary aspects of sentences imposed for violations of probation. However, we conclude that Appellant's first and third sentencing claims lack merit. With regard to Appellant's second claim, we remand to the VOP court for the limited purpose of correcting the erroneous entry in the court's docket concerning Appellant's new sentence imposed in case number 1783.

Judgment of sentence **affirmed**. Case **remanded** for correction of a clerical error in the lower court docket. Jurisdiction **relinquished**.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/15/2016